Mr. Chief Justice, and may it please the Court. The government concedes that the Fifth Circuit's shocks-the-conscience standard is the wrong approach for a Court of Appeals to apply under the fourth prong of plain-error review. The question remains, how should a Court of Appeals exercise its discretion when confronted with an obvious guidelines-error that probably results in a defendant serving a longer prison sentence? We ask the Court to recognize what every circuit but the Fifth already has. That is, in the ordinary case, such an error seriously affects the fairness, integrity, and public reputation of the judicial proceedings and warrants correction. Roberts. One day? I mean, if the person is in prison one extra day, that will cause people to look at judicial proceedings as lacking fairness and integrity? I believe so under the analysis of the fourth prong. Certainly, a sentence of an extra 20 years versus a day, 20 years is worse. But under the analysis of the fourth prong, the question really is, does the nature of the error frustrate the purposes served by the rule at issue? And in the context of the guidelines, a guidelines error directly frustrates the very purposes served by the sentencing guideline scheme, the congressional goals to promote uniformity and proportionality and to avoid unwarranted disparity, to achieve parsimony, meaning that a defendant is sentenced to the least amount of time necessary to effectuate the statutory goals, and to have respect for the district court. No. And these are all reasons that you would consider when the question is – when there is an objection and the question is raised. Here, we're dealing with a situation when there was no objection, so we're in the context of plain error. So it seems to me that you have to argue more than just this was wrong and it ought to be fixed. Agreed. This Court has always said something more is required. But at this point, a defendant has met his burden to show a plain error that affects substantial rights. We have said many times that correction under the plain error doctrine should be exercised sparingly, but I take it your argument is in the context of a guidelines error. The discretion should not be exercised sparingly. It should be exercised routinely. Well, Your Honor, I think the context is that 52b applies to the grand universe of errors, and so guideline errors remain a narrow type of error that can arise. And statistically speaking, in the last fiscal year, of the thousands of sentencing appeals that were raised, less than 6 percent got remanded because they raised a guideline calculation error. So we have the empirical evidence, which is cited on page 12 of the yellow reply brief, that in fact it doesn't happen very often. But then you are saying, you are saying that guidelines errors are exceptions to the general rule that plain error review should yield corrections sparingly. You are saying that this is a category where it should be exercised routinely. I think a guideline error presents a nature of the guideline error is such that it ordinarily will have that effect, but it won't always. And why is that? Why are guideline errors a category in which we should kind of flip what usually happens? It goes from sparingly to most of the time. As the Court has recognized in Pugh and Molina-Martinez, the sentencing guidelines provide the essential framework for Federal sentencing, and there is a well-documented anchoring effect so that when there is an erroneously high guidelines range, there is a significant risk that the defendant was sentenced to a longer prison time than he otherwise would have had the district court not been influenced by the error itself. Kagan That seems more a prong 3 question, isn't it? The question, you know, that most guideline calculation errors are going to have an effect on the sentence. But then there is also prong 4. Why shouldn't that do something different? It's our position that prong 3 and prong 4 do have distinct inquiries, but because there is such a direct nexus between the sentencing guideline error and the effect, the separate inquiries will often be examining the same or similar type of information on the record before it. And while it is true that Molina-Martinez looks at the anchoring effect of the guideline to show that the guideline error itself can be evidence of an effect on substantial rights, the resulting harm of that is a longer prison sentence, and an excess amount of prison is a serious harm that has consequences both for society and the administration of justice. Alito If we said that an error is plain if it creates a risk that the defendant will serve a longer sentence than the defendant would have otherwise served, I don't know what's left of the plain error rule in criminal cases. You seem to be equal. Your argument seems to be that an error is plain unless it's harmless, unless it is not harmless. Isn't that right? No. And there's actually quite a lot left of the plain error analysis. Alito What is left of it in this context? I mean, you cite three examples in your brief. One is when the defendant has waived an objection to the sentence in a plea agreement. The other is when the defendant has already completed the sentence, in which case I think the case would be moot. There would be no opportunity to get relief on a direct appeal. And the other is when the defendant is serving a concurrently running sentence. Do you have others? Yes. We cite the Tyson case on page 8 in the yellow brief, and that's a good example of where we have two different inquiries that are informed by the same sort of information, the effect of the guideline. In that case, the court of appeals assumed that the third prong was met, but denied relief under the fourth prong because it found that the ultimate purposes of sentence were not frustrated by the guideline error because the guideline error didn't serve the basis for the sentence in the first place. Okay. So if there's any chance that the guideline error affected the sentence, then the error is plain. That's your argument? Well, yes. It would rise to a level of seriousness to warrant correction. Okay. Now, if we were to apply that in other contexts, what would be left of the plain error rule in criminal cases? Well, every error is different. And a factor for a court of appeals to consider under the fourth prong is the nature of the error, and I think that can be broken down into two factors. First, for the court to look at what purposes are served by the rule in question, and then to examine the record to see if it demonstrates that those purposes are actually frustrated by the error. So I think that's a type of inquiry that's at least implicit in Cotton and Johnson, and cases like that, errors like that, would certainly. Okay. And evidence is erroneously admitted at trial. It's hearsay. And it's inadmissible hearsay. It's admitted. So there's an error. But the reviewing court says that the harmless error standard for nonconstitutional errors is met. But there is a chance that it had an effect on conviction. So why wouldn't that be a plain error? Well, it likely could be a plain error. I mean, no. Let me back up. The evidentiary standard that has to be met under the third prong of the plain error is a low evidentiary standard, a reasonable probability. That's less than preponderance of the evidence. So it's entirely possible that a court could look at the record and see that the third prong was met, but then looking at the record in total, find overwhelming and essentially uncontroverted evidence that the outcome was right, notwithstanding the error. But you're changing the harmless error standard when you say that, aren't you? Harmless. Excuse me. Are we talking about harmless error standard or the plain error standard? Well, my inquiry is what is the difference between the plain error rule and the harmless error rule, as you understand them. And you just told me, as I — what I think you just told me was that the court would have to say it's uncontroverted, that this had no effect. Otherwise, it would be plain error. If I understand the question correctly as distinguishing between harmless error and plain error, the — one of the primary differences is that the burden remains on the defendant the entire time during the plain error analysis. The burden never shifts like it does under a harmless error standard. Yeah. Well, that ought to cut in the opposite direction, shouldn't it? I'm not sure I understand the question. The defendant has the burden under plain error, right? So it should be harder there. I still don't — I just don't understand what is left of the plain error rule. There doesn't seem to be very much left. If the only question is, is there any chance that it caused the defendant to serve a longer sentence than the defendant would have otherwise served? I think the approach that's applied by the majority of circuits actually gives vitality to the plain error standard as the Court expressed it in Alano. And it turns on the seriousness of the error. So it's going to be contextualized by the error and its effect on. I thought you had just said that the guidelines miscalculation is an exception to the normal way that plain error operates. You have agreed with me that in guidelines miscalculations, the error should be corrected routinely, not sparingly. I thought you were cordoning off guidelines miscalculations from all other errors. No. Let me clarify. The majority approach that circuits apply don't change the formula that is in place under the plain error standard. It still remains that the defendant prove all four prongs. What is different about a guidelines error is the nature of that error. There is a particularly close nexus between the error and the outcome and how that outcome frustrates the purposes served by the sentencing guideline scheme. Well, then your answer to Justice Ginsburg should be yes. It should have been yes at the outset. Sentencing is different. We have separate rules for sentencing, in part because the costs of remand are much less than the cost of a new trial. There can be some complexities. And it seems to me that you just have to confront the consequences of that choice to say that in the sentencing case, an ordinary error is very close to plain error. But you seem to resist that. No. Let me clarify. I think that's the correct formulation, Justice Kennedy. Well, if that's the correct formulation, then why? Why is a sentencing guidelines error more serious than any other type of error, more serious than a constitutional error, more serious than a violation of a statutory command? Here we're not even talking about something that's mandatory. These guidelines exist in some kind of middle universe that I don't understand. But that's another question. Why is this different? Well, the analysis doesn't turn on whether or not it's a constitutional or nonconstitutional error or that the sentencing guidelines are mandatory versus advisory. It's looking at how close of a nexus exists between the error and how it affects the outcome. And because the sentencing guidelines are the starting point for every sentence and are in the real basis what a sentence becomes anchored to, we have empirical data which reflects their anchoring effect, that when there's an erroneously high guideline range, there's a serious risk that a significant risk that the defendant's sentence was also higher than it would have been had the district court not been properly influenced by it. I think the basis for your, or perhaps a basis for your exception, is that the error is so precise, you know, a typographical error has caused the person to stay in jail for, to have to stay in jail for another 6 months. A typographical error in exactly 6 months. So I think one of the considerations we take into account is the reputation for the judicial system, justice system. And if you tell somebody, well, because of a typo, the guy's going to stay in jail for 6 more months, people will say, well, that's not, that's not fair. On the other hand, I don't think that takes into account there is cost associated with that, which is the, the remedy is you send it back for another sentencing hearing, who knows how long, how much time has passed, the judge has to reconstruct the whole operation, and that's caused by your client's failure to object when he should have objected. So why doesn't it make sense to say that it kind of makes a difference if you're talking about a relatively insignificant amount of time? Any day in jail is not insignificant, but there's a difference between an error that results in an additional 6 months and an error that results in an additional 5 years. Is that something that the Court can consider, or is it, I guess it's the first question I ask, is your position one day, and it's plain error? O'Connell. I don't think the amount of excess is the, is the right marker for a court of appeals to determine, because it would run contrary to the congressional goal of parsimony. And as the Court stated in Williams, it's the district court's prerogative to determine the appropriateness of a particular sentence to begin with. As to relative cost, certainly there's always some cost involved to resentencing, but the fact is it is a lower cost than having a new trial, for example. The Court recognized that resentencing doesn't present the same amount of cost in Molina Martinez. Sotomayor, I think of the three prongs, the third and the fourth prong. The third prong as being fairness of process. Were you given the process that you were entitled to constitutionally or statutorily? And so on the third prong, we've had many cases where elements were not given to a jury. This is Nieder case. We've had Cotton where drug amount wasn't given to a jury. We look at that third prong as a substantial deprivation of some form of constitutional or state right. I think of the fourth prong as fairness of the ultimate outcome, which is very different, because often, like in Cotton, where an element like drug amount wasn't given to a jury, we look at the quantum of evidence and say, would the outcome have been different? And that's most of our cases. Was the error so substantial that the outcome was actually unfair? And so for me, that fourth prong does serve, even in sentencing guidelines, a different function. It talks to our third prong finding is that the fairness of a judge, which is process of considering your sentence from a correct kind line, was frustrating. The third, fourth prong goes to, is there a substantial possibility that the outcome was affected, that you would have received a lesser sentence? Is there an error in the way I'm looking at this? No, I don't believe so. And in Cotton, it's not just what the court examined of what the outcome would have been, but based on what that record demonstrated. And I think that analysis would apply in this case, because we don't have a record that demonstrates what a district court would have done by overwhelming and uncontroverted evidence, especially when it's not just a mathematical error of the guideline, but it's premised on a factual error in the criminal history. Sotomayor, I think your point in your brief was he got, at the low end of the guideline, 78 months. Despite all of the negative factors that the government points to in its brief, his serious criminal history, et cetera, et cetera, the judge still sentenced him at the low end of the guideline. And so, that demonstrates that it is possible, not just substantially possible, but that the judge will, in fairness and upholding the integrity of the judiciary, give him a lesser sentence, correct? Yes. It's a strong possibility. Yes. Ms. Davidson, I was wondering about our standard in the lotto in the fourth prong, talking about fairness, reputation, integrity of judicial proceedings, where it came from. And I traced it back to Atkinson, 1936, I know you've cited that. And I wondered your thoughts about that, because in Atkinson, it said district courts should be guided by the following test in when to exercise their discretion to correct a plain error. And it suggested that they should correct a plain error whenever it's obvious or when it affects the fairness, integrity, or public reputation of judicial proceedings. And Olano turned that or into an and. What do we make of that? Well, I'm aware of that history. But I also can't ignore how often cited the Court has restated Olano's formulation. So I don't have a position in going back to a pure disjunctive. But I would like to point out that in articulating that what became the fourth prong standard in Atkinson, Atkinson cites Brassfield. And in Brassfield, it's an example where the Court recognized a type of error that, by virtue of inquiring into the numerical division among the jurors, that inquiry itself impugned the system. And so I think there is recognition that different errors have a different degree of seriousness and have a different level of effect compared to. Well, if that's true on the fourth prong, public reputation, let's say, how are we to determine that normatively, right? Or is it an empirical matter? We're supposed to take a poll. I think if we took a poll, we'd find that a lot of people may not care about how long your client spends in prison, right, whether it's an extra six months or not. Should that matter? Public reputation in an institution that's designed to check majoritarian impulses, like the judiciary is supposed to, should those majoritarian influences even matter in our consideration of the fourth prong? Well, I think it's difficult because there's not going to be that type of evidence on a record of what the public thinks. But I think the formulation of the fourth prong, public reputation of the judicial proceedings, is less of an examiner. It's not public reputation of the defendant. It's of the judicial proceedings. And so I do think that the judicial proceedings is less of an examiner. So it's a normative inquiry rather than an empirical one, I think, is what you're suggesting. In which case, should the fact that a person spends a day in prison longer than the law permits be something we should care about? Yes, especially when it results from an obvious and easily correctable error. That we've made ourselves. Correct. If there are no further questions, I'd like to reserve my time for rebuttal. Thank you, counsel. Mr. Ellis. Mr. Chief Justice, and may it please the Court. The Plain Error Rule is designed to capture a narrow set of errors that we as a society are not willing to subject to the ordinary rules of party presentation and forfeiture that govern Federal proceedings. The question here is whether clear guidelines errors as a class will almost always meet that test. We think the answer is no, and the Petitioner's argument to the contrary ignores fundamental aspects of the Federal sentencing regime, is inconsistent with the Federal rules and this Court's precedent. Isn't it so that most circuits, if not all, that have addressed the question do take the position that guidelines miscalculations, if they're clear, call for correction on plain error review? So I think Petitioner overstates the consensus in the lower courts. Only two courts of appeals are adopted. Did the Tenth Circuit? I'm sorry? Did the Tenth Circuit in, what is it, Sabalone-Humana, overstate it when the Tenth Circuit said that the third and fourth prongs of plain error test align in these guidelines miscalculations? So I think what the Tenth Circuit said is that courts of appeals often exercise their authority under the fourth prong when the first three are met, and that some have adopted a presumption. That's correct. Two courts of appeals have adopted presumptions, but even those courts have recognized that that presumption may be rebutted in case, based on the factors that we've identified in our brief as grounds not to exercise the court of appeals authority. And in fact, the Third Circuit, one of those two circuits, since Molino-Martinez has announced, has made clear that the fourth prong should be applied on a case-specific basis, and that even in a case where the first three prongs are met, even in a guidelines case where the first three prongs are met, it imposes a considerable barrier to relief. Kagan Mr. Riles, can I just – Justice Gorsuch, when he was a judge, wrote this opinion, which I'm sure you've read many times, and I just want to quote one sentence from it and then ask you what you think about it, because he basically, you know, suggests why you maybe lose. But this is what he said. He might not agree with this anymore, who knows. But he says, What reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in Federal prison than the law demands, especially when the cost of correction is so small? And I take that to be combining three things. First, you have a deprivation of liberty. Second, you have an error, as he says, of your own devise. In other words, the court has something to do with it. The probation officer has messed up, and then the court hasn't caught the error. And third, that the cost of correction is small, certainly relatively smaller. And you package those three things together, and you get a, you know, a rule that does mean that they're routinely, as opposed to sparingly, corrected. Why isn't that right? So there's a lot packed into that. So I think just sort of starting with the man on the street and what the view of the judiciary, I think if you went on to explain that ours is a system of party presentation that's been designed so that the parties have an opportunity to raise errors, and they're expected to do so, that any complicated system, like a system of judicial justice, has to have rules, and those rules have to have meaning, that I think it's — I don't know that they would conclude or look less upon the judiciary if, in an ordinary — Kagan. I'm sorry. No, please. You're doing a much better job than I can. I think what this is saying is, yes, the reasonable citizen, assuming this great But he would say, here's this particular kind of error, and it's rare that all of these three things come together. Deprivation of liberties, that's pretty common. But low costs, that's not so common. And the fact that the error is of the court's own making, that's really uncommon. And you put all those three things together, there's just one result that's screaming out at you. So you're exactly right that the deprivation of liberty is not so uncommon. I mean, this is the rule of criminal procedure. So any time that this rule comes into play, deprivation of liberty is at stake. So then we're talking about the cost. And we think the cost might come in in two different ways. One way might be in setting the standard as — for when you might apply plain error. But we think the Court did that in Olano, that it was correct, that standard was ratified in the 2002 amendments to the Federal rules, indeed where it conformed to Olano, and that this Court has — doesn't have the authority to change that standard outside of the Rules Enabling Act and the procedures identified there. And then you move on to whether the Court was one of the courts on making. And I just don't think that's quite right. The probation office is, of course, a part of the Court. But the responsibility for raising errors still lies with the defendant. And the defendant has ample opportunity in most cases, and indeed in this case, to review the PSR and bring to the Court's attention any errors. And the error in this case was one, and in many cases will be one, in which the defendant is uniquely competent to identify and bring to the Court's attention. So you put all that together, and I don't think it follows. Ginsburg. Would it be ineffective assistance of counsel for counsel not to notice a glaring error in calculating the guidelines? I think it's — there are some — there may be some cases, perhaps. We don't think that — and there's been any claim in this case. We don't think every failure to spot an obvious error in the PSR would amount to deficient performance or necessarily amount to prejudice under this — under Strickland. And we think this case is about the category of errors that don't amount to ineffective assistance of counsel and what the Court of Appeals should do when they're raised for the first time on appeal. I still am not sure, when I leave here, and write down what your position is, what is your definition of the fourth prong as it applies to this case? Sure. So our definition is — is what the — is the Court's definition. Unfortunately, this is a — not an area, much like sentencing itself, that lends itself to bright-lined rules. What is your best guidance as to how to apply it in this case using neutral principles? General principles. Yeah. Sure. So I think the test is the one from Alano, whether the error is one that seriously affects the fairness and integrity of judicial proceedings. I think the nature of the guideline — of the error here should inform that analysis. The Petitioner has argued that we deny that it's relevant, but that's not true. We don't think it's grounds to create an exception to the rule, and we don't think it's grounds to change that standard. But we do think it's highly relevant to how it applies. So what — I'm waiting to write something down. Sure. We think that in a guidelines case, in the ordinary guidelines case, where the sentence that was imposed is one that is lawful and one that is — that would be reasonable, even if the error had been brought to the attention of the court and corrected, it's going to be an unlikely — an unusual case where that is the type of error that seriously affects the fairness, integrity, and public reputation of judicial proceedings. But there may be — there may be a case where it does, right? I mean, we're talking about whatever the length of time is here, but let's say the guideline says you should get somewhere between 2 and 5, and in fact — between 8 and 10, and in fact the right guideline was 2 and 5. Would that be a situation where you said the balance worked out so that it would be plain error? I think it's hard to give a concrete answer based on, you know, facts like that. We do think that it is a much more often — more often will be met in cases where the sentence doesn't fall within the correct range, and we do think, as you noted before, that the magnitude of the error is — is relevant to the analysis. We also think that what's relevant is that the court could have, even if we couldn't say would have, departed from the range that it's calculated up to the range that was the correct one. Breyer, is that — is that — because I have a — I'm drawing on what the Chief Justice said now and before, in my mind, and the question in my mind is, should we proceed by category? And people have been focusing, which I agree with, about the — what Justice Kagan said in drawing on what was written by Justice Gorsuch, what people would think of this. But I'm not thinking of what people would think of this. I'm thinking of what the guidelines are about. And we have, one, there was an error. Two, it's clear and obvious. Three, it did affect the party's rights. He went to jail at least one day more. Okay? So we got those three things. And given those three things, it's probably an arithmetical error. Probably, but not definitely. And then we ask for, did the error affect — now, there are three things here. Fairness, and the second one is what I'd focus on. I'm not focusing on fairness. I'm not focusing on public reputation of judicial proceedings. I am focusing on the integrity of the judicial proceeding. And the reason I'm focusing on it is because the guidelines have a special purpose, and they have a special procedure. The special purpose is to create a kind of uniformity among people who do the same thing in respect to their punishment. And the special procedure is that the commission and the courts cooperate in gathering statistical information so that the commission can see how that's working. Now, as soon as you have people who depart for incorrect reasons from what they're supposed to put, you muck up that statistical information. And although you could say with just one or two, it doesn't matter, there is no way to distinguish between one or two and 51 or 52. And maybe one across the country, but maybe one in a single district does matter. And so all those kinds of technical mistakes that do affect the party, that are clear, do interfere significantly with the congressionally legislated purpose of the guidelines and the effort to implement them. Therefore, considered as a class, because of the difficulty of distinguishing among them, we don't want to go case by case, distinguishing as a class where one, two, or three is four. To the least, there is a presumption to that effect. All right. That's how I would look at it. And what's the answer to that? So a couple of responses to that, Justice Breyer. Number one, in Pepper, this Court recognized that the sort of disparity that Congress is was worried about in the guidelines context is not the sort of disparity that's caused by the ordinary rules of appellate procedure. And so we don't think there's any indication here that the kind of disparity that the Congress was concerned about is the type that flows from the ordinary application of the plain error rule. As for the nature of the guidelines and how they work, we actually think that cuts the other way. As I say, we do think it's relevant. But the difference in a sentencing case is that, unlike in a trial, the outcome isn't binary. So when you're talking about an error that meets the first three prongs, you're not talking about an error that creates a reasonable probability of a different outcome in the trial, that is, a conviction or acquittal. You're talking about an error that creates a reasonable probability of some movement in the sentence. But a defendant in the Federal system isn't entitled, in most cases, to one particular sentence after a duly been duly convicted. Rather, they're entitled to one of a range of lawful sentences. And the Sentencing Commission has established a framework in which there is, for any given defendant with a given criminal history and a given offense conduct, there is actually a range of reasonable sentences within that lawful one. And so when you're talking about an error that may have created a reasonable probability of moving within that range, but the sentence that was imposed still falls within the right range. BREYER. Correct. But if you will read, as I hope you would someday, the introduction to the initial version of the Guidelines, which happens still to be there, you will see that the purpose of the Commission is first to create a set of Guidelines, and then through the procedures I'm talking about, to see what judges actually do in administering the Guidelines so that those can be improved and changed over time. Now, if we are looking at not what the judge did under the Guideline, but what the judge thinks he did under the Guideline, but he got the Guideline all wrong, then our we can't do, we can't carry that out. As I say, we might be able to live with one mistake in one district, but then we have to distinguish which ones and there's no way to do that. So you might end up with 50, the same point I'm making before. So I'm saying what the integrity is that is interfered with is the integrity of the congressionally mandated purpose and method through which the Guidelines are to be implemented. So I don't think there's a record for it to conclude that the ordinary application of the Plain Error Rule is going to so muck up the system, as you say. And if there were, I think that would be maybe perhaps grounds for someone to consider a change to the standards. Well, Mr. Elissa, if along those lines, though, Congress did speak to this question. The feedback loop problem that Justice Breyer has been alluding to in 3742 F1, where it said if there's an error in calculating the sentencing guideline, the case shall be remanded. Yes, that's true. Not may. I take it you'd have us read shall to mean may. So I think that provision, 3742 F1, was written to deal with preserved errors in a mandatory system. So you haven't suggested that the statute's ineffectual, have you? You'd have us just ignore the statute then? So I think there's actually a debate. I think those are your choices, right? We either ignore the statute or we read shall to mean may. Have you got a third option? I think there is. Number one, I think in putting So the third option is to read that to discuss, to refer to preserved errors, and to incorporate the established rules. That's what the Court said in Williams, that that may still is subject to the Harmless Error Rule. We see no reason why it wouldn't be subject to the Plain Error Rule. That shall is part of the mandatory regime. I thought that was declared unconstitutional in Booker. So that's the first option that he gave me, and I think that's still open to the Court. In footnote 7 of Greenlaw, this Court specifically flagged that the discussion there is not meant to settle the question as to whether 3742 F1. I mean, suppose a district judge said, all right, you know, there's a dispute about what the guidelines range is, and one of the guidelines that's possible here has a range that includes the sentence of 60 months. And I have considered the statutory factors that I am supposed to consider in identifying a just and appropriate sentence, and I think 60 months hits it right on the head. And that's the sentence that I'm going to impose, and I would impose that sentence no matter what the guidelines said. Would there be a problem there? There would not. That would not meet the third prong of plain error. I'd say that's not so far off from what happened here. So the – I think we talked about the factors in our brief. But that would be – if shall is taken literally, that would still be subject to reversal, wouldn't it? I think that's right. I think the Court dealt with that in Williams when it said that the shall still is subject to the harmless error rule, and I think in that case it certainly would be harmless. It may be worth going through why we think this particular error is not one that seriously affects the fairness and integrity. So we've numbered out – laid out a number of factors in our brief from pages 36 to 39, but we think maybe three are the most important here. And the first is that – Before you leave that, I'd just like to nail this down, because the harmless error rule makes sense to me in Williamson in light of the language, because the Court has to determine that the sentence was imposed as a result of an incorrect application of the sentencing guideline, and if it's harmless, it wasn't imposed as a result of. But how do you get plain error into this rule? How do you get, you know, that problem solved without turning shall into may, or ignoring the statute altogether? So I think you get it by recognizing that that provision was passed under the backdrop of plain error, that it was talking about preserved errors, and that there's no reason to think that the Congress meant to overturn it there. And you get it by saying that – by recognizing that that provision was enacted as part of the mandatory guideline system, that what it was doing was implementing 370.42e, which this Court said was unconstitutional in Booker and therefore struck it. And so I think there's a decent – a very good argument that, in fact, with it goes the subsequent provision that says when you violate a provision, an unconstitutional provision in 370.42e, here's what you do. And so in this case, as I say, there are three principal reasons why we think that there does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Number one, the sentence that was imposed fell within the corrected range. So we know from that that in the Sentencing Commission's expert judgment, this is a reasonable sentence for a defendant with Petitioner's criminal history and offense conduct, for a typical defendant in that position. Number two, the district court imposed a sentence within the range it thought was appropriate. And so we know from that, or can infer, that the district court concluded that the Petitioner was, in fact, a fairly typical defendant with his criminal history and offense conduct. Breyer, just a second. Just in case you know this, I mean, I should know it. I wrote it. I don't necessarily. Did we declare this section unconstitutional in Booker? I mean, we tried to save as much as we could, and I don't know why we wouldn't have saved this one. No, the Court didn't. There was a dispute about whether F would go down with E. It was subsequently, Justice Scalia subsequently wrote about it in a concurrence in Rita. And then the Court wrote about it in footnote 7 of the majority opinion. My goodness, that's very good. That's very good. And so we kept it or we didn't? It's an open question. It's an open question. Okay. Thank you. We don't think it needs to be resolved in this case because we do think it's talking about preserved errors and the plain error rule would apply. Number three, there were three reasons the district court imposed not just a sentence pegged to the bottom or top of what they thought was the correct range, but somewhere in the middle, albeit in the bottom half. Well, pretty low, you know, just over the bottom. But I think it seems to me all these, 1, 2, and 3, run smack into Malina Martinez, which, you know, basically rejected all of these arguments and said it doesn't matter if your sentence ends up in the middle, because the range does something. It anchors people's sentencing determinations and it anchors them sufficiently so that even if you could have reached that sentence regardless of the range being wrong, we think the error in the range matters and is likely to matter in the great majority of cases. And you're suggesting that we ignore everything we said about that now. Not at all, Your Honor. I think the court was dealing very clearly with a third prong of Malina Martinez. And the question under that third prong as we see it is whether it creates, and as the Court said, a reasonable probability of a different outcome. That's a predictive judgment that can be based on empirics. And the Court reasonably did so in Malina Martinez. And it doesn't matter for that as to whether the change was a day or 10 years. It just doesn't. The question is whether there's a reasonable probability of a different outcome. And there is. The question under the fourth prong is whether that's the sort of error that's so egregious we won't submit it to the ordinary rules of party presentation and forfeiture. And that's a broader inquiry, we think, and one in which it matters that it's a day or 10 years, and one in which it matters that this is the sort of error that the defendant had every opportunity to raise and, in fact, was uniquely competent to raise. And it matters that the district court, even if we can't say definitely would have, although there's some indication that it might, that he could have. And that sentence would have been reviewed very deferentially on appeal, and it would have been a reasonable one. All those things weigh in, we think. Sotomayor, when you're talking about reasonableness, it seems like you're doing substantive reasonableness, which is what the Fifth Circuit was doing with its standard. It borrowed a substantive due process right or standard, shocked the conscience, and applied it to this sentence. And it sounds like with all your three reasons and your argument, which is the only thing that matters is that it does – that this is a reasonable sentence, no matter if it's not the sentence the district court would have given. That's basically your argument, isn't it? We think that matters. All right. But why? When the three prongs of the fourth, the three arms of the fourth prong say fairness, integrity, or – I've forgotten the fourth, but it's a – Public reputation. Public reputation, or is disjunctive, not conjunctive. That's right. So why isn't it unfair? We think it's not unfair. That's a procedural right. That's not a substantive right. So a couple of responses to that, Your Honor. We think it's not unfair because the contemporary subjection rule is the ordinary case, that applying that rule and the consequences of that rule is fair. We think it's reasonable to look at the substantive result. That's not what this fourth prong says. What this fourth prong appears to say is the fairness, integrity, or public reputation of our judicial system. What's fair about an error that the judge in part was a part of that could be easily corrected and that might very well result in a lower sentence to a defendant? What's fair about not correcting that error? I think what's fair is that I think a system has to have rules and those rules have to have consequences. And I think that people would understand that. And in the ordinary case, that it does – just the fact that the defendant didn't raise his error in a timely manner is sufficient reason to say that we're not going to correct it on appeal. You noted the cost, and that's come up several times in this colloquy, in our discussion. And I think that the cost may be a reason to change the standard, but we don't think it's a reason to – that the Court should consider in applying this standard. We don't think, for example, that two otherwise identical trial errors should be subjected to a different standard because one came from a two-day trial and the other a two-month trial, and therefore would be more expensive to correct. But there again, Melina-Martinez is against you, right? Because in that case, we talked about the fact that a remand for resentencing, I'm quoting now, while not costless, does not involve the same difficulties as a remand for retrial. And we talked about, the government had this concern over judicial resources, and we specifically rejected that, and we said, you know, that the resources are not sufficient for us to take that seriously here. So what the court said is that it's not the same as a retrial. What the court also said is that it doesn't really matter, because it's not relevant to the standard under the third prong. And we agree it's the same under the fourth prong, that the costs of resentencing aren't relevant to the application of whether the error itself is one that significantly affects the fairness, integrity, and public reputation of judicial proceedings. If we're going to compare the cost empirically of the two systems, wouldn't we have to account for the fact that under the regime you propose, there are a lot more appeals that the courts of appeals have to resolve? In the circuits where this rule exists or this presumption exists, the government frequently confesses error to mathematical mistakes in the guidelines applications, and it automatically goes back for resentencing without the need of appellate resources being involved. Should that be a cost that we should consider, or is that one you would have us ignore? So to be clear, it's my position that cost is not relevant to applying the standard. It might be the fourth prong as well, it's irrelevant there, too? Yes. And I also think that it's not clear empirically that that would be true. I think the point of the plain error rule and the narrowness, the reason it's strictly circumscribed, is to maintain the incentives in the first instance to raise those errors. So you never get to the point where someone's filing an appeal about an error they didn't raise. That's just an argument against the plain error rule altogether, isn't it? No, I don't think it is. It's an error for keeping the plain error rule to be a narrow one, to be strictly circumscribed, to maintain the balance between Rule 51 and Rule 52 and maintain the incentives. And that's what the Court has always said about what it's concerned about in applying the plain error rule. If the plain error rule was a narrow one, it would be a narrow one, but it's a narrow one. Kennedy, are there some courts, and I don't mean to be facetious, because I think I remember that, are there some courts of appeals that just write the district judge a letter and say, would it make a difference? So there is this limited remand procedure that the Court identified. Limited remand, yes. So the Court identified that in Molina-Martinez as a way to mitigate the cost. It's really about the third prong, because the third prong is, is there a reasonable probability of a different sentence? And so you can answer that, ask the judge. But if the judge says yes, there's still the fourth prong and there's still the full resentencing that follows. Post-Molina-Martinez, we haven't found any examples of courts utilizing that for a guidelines range error. In fact, the Seventh Circuit has said that's not about guideline range errors. That's about the Booker errors and whether they treated the guidelines advisory or mandatory. If there are no further questions, we would ask the Court to affirm the judgment below. Roberts. Thank you, counsel. Ms. Davidson, seven minutes. I would like to start with what Justice Breyer said about the guidelines as being a specialized body of guidance that has specialized proceedings. And we can't ignore the context and the essential framework that the guidelines and the court's decisions regarding how those guidelines function just because we're under the fourth prong. And so we disagree that the factors that the government considers are even appropriate because they're directly at odds with the clear guidance the court has provided. I also want to address the discussion about 3742. I agree that whether or not it's still viable doesn't have to be decided today. But I do think it provides clear congressional judgment that at the point at which substantive rights are affected, it's at least Congress's intention that the error is serious enough that it warrants remand. In conclusion, prongs one, two, and three have been met. The Fifth Circuit applied the wrong legal standard under the fourth prong. The government presents factors that are appropriate for a district court to consider. And that's why we ask this Court to reverse the judgment and remand with instructions that the sentence be vacated and that the case be remanded to the district court for resentencing. Would you draw a distinction between guidelines errors and other sentencing errors? Yes. And what would be the ground for that? It would depend on the direct effect the particular sentencing error would have on the And that can be different than how the guidelines function. Well, suppose there was a question about whether a defendant was properly treated as a recidivist. That would, if I understand the question correctly, it would be a district court's conduct as opposed to the guideline. If it's purely conduct. I'm talking about a non-guidelines issue, a statutory issue where there's a heavier sentence imposed based on prior criminal conduct. If it were erroneous, and that's what the — if it were erroneous, and the district — and the record demonstrated that the district court was influenced in choosing its sentence because of that error, then I think that it would reflect an error that improperly influences the discretion of the district court and could be serious enough to meet all four prongs. Thank you. Thank you, counsel. The case is submitted.